IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              NO. CR 03-218  JC

LUZ MARIA VALENZUELA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

On March 14, 2003, Defendant Luz Maria Valenzuela filed a Motion to Suppress Stop, Statements and Physical Evidence (Doc. No. 37).  On July 2, 2003, the Court held a hearing on Defendant's motion.  At the hearing, the Court found that Defendant Valenzuela was arrested roadside at the time handcuffs were placed on her and she voluntarily consented to go to the border patrol station with Agent Richard Huerta.  Upon the Court's request, the parties submitted post hearing briefs on the issue of whether there was probable cause to arrest Defendant Valenzuela at the point when she was handcuffed.  On July 24, 2003, the Court entered a Memorandum Opinion and Order granting Defendant's motion to suppress any statements made by Defendant after her arrest on the ground that the border patrol agents did not have probable cause to arrest Defendant at the time they handcuffed her (Doc. No. 70).  On August 4, 2003, the United States filed a Motion to Reconsider Memorandum Opinion and Order Granting Motion to Suppress (Doc. No. 72).  The United States requests that the Court reconsider its finding that Defendant Valenzuela was arrested roadside at the time she was handcuffed.  The United States

also asks the Court to hold a supplemental hearing so that the United States can more fully develop the facts surrounding the issue of when Defendant was arrested. Having considered the briefs and the evidence, the Court concludes that the United States' motion to reconsider and request for a supplemental hearing should be denied.

In support of its request for a supplemental hearing, the United States argues that the relevant facts were not fully developed because "the issues surrounding the handcuffs were not anticipated prior to the hearing." Pl.'s Mot. to Reconsider (Doc. No. 72) at 1. However, in her motion to suppress, Defendant expressly raised the issue concerning the point at which Defendant was arrested. In that motion, Defendant asserted, "At the time of the stop, Ms. Valenzuela was handcuffed and arrested prior to her transport to the border patrol office, where she was ultimately questioned. This arrest was not supported by probable cause that she was involved in criminal activity." Def.'s Mot. (Doc. No. 37) at 2. The fact that the government may have glossed over this contention does not make the Defendant's argument any less clear. The government not only received sufficient notice of this argument, but it had two opportunities to brief its position and a full evidentiary hearing at which to develop the relevant facts. At that hearing, the Court stated its finding that Defendant Valenzuela was arrested roadside at the time handcuffs were placed on her and she voluntarily consented to go to the station with Agent Richard Huerta. The United States did not ask the Court at that time for a supplemental hearing. Instead, the United States requested a chance to brief the issue of whether there was probable cause to arrest Defendant at the time she was handcuffed, a request this Court granted. In its supplemental brief, the United States again did not challenge this Court's finding of when Defendant was arrested. Rather, the government waited until after the Court made a ruling on the

merits of Defendant's motion to suppress before raising its objection to the Court's finding. Given the ample opportunities the government had to submit evidence and argument on this issue, this Court is not inclined to grant the United States a second bite at the apple. Furthermore, the Court has reviewed the evidence the government anticipates presenting at a supplemental hearing and determines that it will not change the Court's finding as to when Defendant was arrested.

A person has been "seized" within the meaning of the Fourth Amendment if, based on the totality of the circumstances, a reasonable person would believe that she is not free to leave or to decline an officer's requests. Florida v. Bostick, 501 U.S. 429, 439 (1991); U.S. v. Mendenhall, 446 U.S. 544, 554 (1980); U.S. v. Lambert, 46 F.3d 1064, 1067-68 (10th Cir. 1995). Although a person may validly consent to being questioned, consent may be withdrawn or its limits exceeded. Florida v. Royer, 460 U.S. 491, 503 (1983) (plurality opinion) (holding that consensual aspects of encounter with officers evaporated where defendant reasonably believed that he was being detained and was not free to leave); U.S. v. McFarley, 991 F.2d 1188, 1191 (4th Cir. 1993) (noting that consensual search or seizure must be measured against Fourth Amendment principles when consent is withdrawn or its limits exceeded). An encounter that loses its consensual nature may violate the person's Fourth Amendment rights. Bostick, 501 U.S. at 434.

At the suppression hearing, the Court found that Defendant initially consented to go to the border patrol station with the agents. Nevertheless, the Court determined that the way in which Defendant was subsequently detained was so restrictive as to be indistinguishable from an arrest and required probable cause. See U.S. v. Woodrum, 202 F.3d 1, 8 (1st Cir. 2000) ("[W]hen an encounter takes some appreciable time or moves to a private space (say, an interrogation room or a dwelling), the justification for the detention becomes an issue because the individual may no

longer understand his participation to be voluntary."). The Court based this determination on the facts that Defendant was handcuffed and placed in the back of a border patrol vehicle for transport to the border patrol station. Moreover, the agents took Defendant's driver's license, cell phone, and the keys to her truck. Another agent drove Defendant's truck back to the station. The encounter lost its consensual nature at this point, as a reasonable person would not believe that she was free to leave or that her continued participation was voluntary. See Lambert, 46 F.3d at 1068 (holding that what began as consensual encounter quickly became an investigative detention once agents received defendant's driver's license and did not return it to him). Consequently, although Defendant may have initially consented to go to the border patrol station, the Court concludes that Defendant's subsequent detention had all the trappings of a formal arrest, requiring probable cause.

  The Court's finding is further supported by the statements of the border patrol agents. Agent Huerta admitted that when Defendant was handcuffed and in the patrol car, she was not free to leave at that point. Even more striking, at the hearing and in response to defense counsel's question as to whether Agent Christine Britol arrested Defendant after questioning her at the border patrol station, Agent Britol stated that Defendant was already under arrest because Defendant "already had handcuffs" and "was already in custody." Suppression Hearing Transcript at 75. Although the Court acknowledges that the expressed views of the agents are not controlling on the issue of whether Defendant was in fact arrested, the agents' views are a factor to be considered in evaluating the totality of the circumstances. U.S. v. Manbeck, 744 F.2d 360, 377 n.25 (4th Cir. 1984). Here, the agents' subjective views that Defendant was arrested when she was handcuffed and transported to the border patrol station reflect what the objective

evidence demonstrates: Defendant was no longer free to leave when the agents handcuffed her; took away her driver's license, cell phone, and truck keys; and transported her to the border patrol station in the back of a border patrol vehicle.

The United States contends that Defendant was handcuffed, not because she was under arrest, but rather because of officer safety. The United States argues that handcuffing Defendant was necessary because there were no female officers available to pat down Defendant for weapons. Further, the government claims that if an additional hearing were allowed, the United States would show that Agent Robert Gonzales advised Defendant that he was handcuffing her for safety reasons and that Defendant did not object. The problem with the government's argument is that there was no individualized reason to believe that this particular Defendant posed a threat to the agents' safety. The government has pointed to no evidence or testimony that this particular defendant had a gun or was violent. Rather, the government relies on the mere fact that marijuana was discovered in the Cadillac driven by co-Defendant Julio Reynaga-Cortes. The marijuana alone, however, is not enough to warrant the intrusiveness of handcuffs. See U.S. v. Melendez-Garcia, 28 F.3d 1046, 1052-53 (10th Cir. 1994) (holding that, although drugs and guns often go together, drugs alone will not support a per se justification for the use of handcuffs absent specific facts related to a particular defendant). Moreover, in this case the evidence actually contradicts the government's contention that the handcuffs were reasonably necessary under the circumstances. Agent Huerta admitted to having no reason to believe that Defendant was armed or dangerous. In fact, when Defendant was stopped, she was cooperative with the agents at all times and did not exhibit any unusual behavior. Based on the evidence in the record and on the evidence the government anticipates presenting at a supplemental hearing, the Court

determines that the government has not met its burden of showing that handcuffing Defendant; taking her driver's license, cell phone, and keys; and transporting Defendant to the border patrol station in the back of a border patrol vehicle were reasonably necessary under the circumstances. The intrusiveness of Defendant's seizure exceeded the scope of Defendant's consent.  See Royer, 460 U.S. at 501-02 (holding that defendant was effectively seized for purposes of Fourth Amendment and that encounter became non-consensual when officers identified themselves as narcotics agents, told defendant that he was suspected of transporting narcotics, and asked him to accompany them to a police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart).  Accordingly, the United States' Motion to Reconsider Memorandum Opinion and Order Granting Motion to Suppress should be denied.

IT IS THEREFORE ORDERED that:

1.	The United States' Motion to Reconsider Memorandum Opinion and Order Granting Motion to Suppress (Doc. No. 72) is DENIED; and

2.	The United States' request that the Court hold a supplemental hearing is DENIED.


_____
CHIEF UNITED STATES DISTRICT JUDGE